UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN C. BROOK and MATTHEW J. PEED,

    *Plaintiffs,*

v.

BRADLEY D. SIMON and SIMON & PARTNERS, LLP,

    *Defendants.*

Civil Action 1:17-cv-6435(GBD)

# REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' RULE 60 MOTION FOR RELIEF FROM THE JUDGMENT

Rhett O. Millsaps II
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (646) 535-1137
Fax: (646) 355-2816
rhett@rhettmillsaps.com

*Attorney for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT .....................................................................................................................3

I.   Defendants Disregard the Relevant Standard of Review and the Second Circuit's Instruction that "Leave to Amend at Least Once Should Normally Be Granted as a Matter of Course" ...................................................................................................................3

II.  The Amended Complaint Cures the Defects and, Alternatively, Asserts Causes of Action Consistent with the Court's Opinion ................................................................................6

    A.   Brook's Quasi-Contract Claims ...............................................................................6
    B.   Brook's New Claims ................................................................................................9
    C.   Simon Ironically Misrepresents the Fraud/Rescission Claim, Again ...........................11

CONCLUSION ................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*James v. Watt*,
   716 F.2d 71 (1st Cir. 1983) ................................................................................................ 5

*Kreppein v. Celotex Corp.*,
   969 F.2d 1424 (2d Cir. 1992) ............................................................................................. 4

*Oliver Schools, Inc. v. Foley,*
   930 F.2d 248 (2d Cir.1991) ............................................................................................ 1, 4

*Sahni v. Staff Attorneys Ass'n*,
   2018 WL 654467 (S.D.N.Y. Jan. 30, 2018) ...................................................................... 3

*Strategic Capital Development Group, LLC v. Sigma Tau Pharmaceuticals*,
   198 F.3d 234 (2d Cir. 1999) ........................................................................................... 3, 5

*Williams v. Citigroup Inc.*,
   659 F.3d 208 (2d Cir. 2011) ........................................................................................ 3, 4, 5

**Rules**

Fed. R. Civ. P. 12 ........................................................................................................... 2, 5, 7, 9

Fed. R. Civ. P. 15 ..................................................................................................................... 3

Fed. R. Civ. P. 60(b) ......................................................................................................... 3, 4, 5

Pursuant to Federal Rule of Civil Procedure 60, Plaintiffs Brian C. Brook and Matthew J. Peed respectfully submit this Reply Memorandum of Law in support of their Motion for Relief from the Judgment.

**PRELIMINARY STATEMENT**

Defendants repeatedly mischaracterize Plaintiffs' motion as seeking "unusual" relief, while ignoring settled Second Circuit precedent cited in Plaintiffs' opening brief that makes clear that it was this Court's denial of at least one opportunity to amend that was unusual (and improper). *See* Memorandum in Support of Plaintiffs' Rule 60 Motion for Relief from the Judgement ("Pl. Br.") at 5-6. "Where the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course." *Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 253 (2d Cir. 1991) (reversing district court's denial of leave to amend). Indeed, the Second Circuit has reversed district courts for denying leave to amend, even postjudgment, on multiple occasions. *See infra* § I.

Because Defendants' opposition is essentially a non-responsive rant, which ignores or misrepresents Plaintiffs' arguments for relief, Plaintiffs respectfully rest on their opening brief for the key substantive inquiry: Whether the proposed First Amended Complaint ("FAC") can cure the defects found by the Court. Defendants devote about a page to addressing this issue with respect to Brook's previously dismissed quasi-contract claims, conceding that the FAC alleges that "there was no agreement," Memorandum of Law in Opposition to Plaintiffs' Motion to Vacate Judgment Pursuant to Rule 60(b), Fed. R. Civ. P. ("Def. Br.") at 20, while as to Peed, they avoid discussing it entirely—thus forfeiting the issue.

Moreover, Defendants' opposition brief actually illustrates why this case should survive the pleadings stage and go to a jury. Defendants lead off by arguing about the importance of and inferences to be drawn from the supporting evidence that Plaintiffs attached to show that the

1

proposed amendments are made in good faith. These documents are consistent with Brook's position – even if Defendants can show that some of the documents could be interpreted differently – and on a Rule 12(b)(6) motion to dismiss, the Court is required to draw all reasonable inferences in Plaintiffs' favor. And these documents, just like those attached to Defendants' motion to dismiss, should not be considered in a vacuum – especially when the crux of this case is about a purported oral agreement, the terms and contours of which are vigorously disputed.

Defendants' opposition brief is replete with falsehoods and hyperbole. For example, Defendants state that "from the time he arrived to the time he departed, [Brook] did *nothing* but complain, haggle and attempt to renegotiate." Def. Br. at 7 (emphasis added). In fact, however, Brook undisputedly originated a lucrative, high-profile client (the CEO of Duane Reade drugstores) and operated virtually autonomously without bothering Simon for weeks, billing hundreds of hours and generating over a million dollars in revenue in a period of just a few months. From Defendants' gross mischaracterization, it sounds like they would like to rescind the whole relationship and unwind the whole nasty affair. Well, that is precisely what Plaintiffs have asked to do. By contrast, Defendants, understandably, want to keep all the money they unjustly made off of Plaintiffs.

Justice requires that this Court refuse to countenance Defendants' deception now, by allowing Plaintiffs to pursue their claims for Defendants' deception and other malfeasance in 2011 and 2012. It would be fundamentally unjust—and inconsistent with binding precedent—for this Court to let Defendants escape accountability just because they have possession of the disputed funds, especially since Defendants created this situation by refusing to come to a final

agreement in writing. The Court should set aside its judgment and accept Plaintiffs' proposed FAC, which the proffered evidence shows Plaintiffs have submitted in good faith.

## ARGUMENT

Considering the Second Circuit's express instruction that leave to amend should be granted, even postjudgment, at least once when the defects are capable of being cured, it is unsurprising that Defendants leave the critical inquiry—whether the defects can be cured—until the very end of their brief. They waste most of their brief on inapposite arguments about the standard of review in wholly different circumstances. And their attempt at distraction belies the weakness of their arguments on the sufficiency of the FAC. Once again, Defendants resort to outright falsehoods about the FAC's allegations to try to prevent at least one Plaintiff from having a chance to prove his case in court. As to the other Plaintiff, Defendants do not even try to articulate an argument against the adequacy of the revised pleading, and thus forfeit the issue.

I. **DEFENDANTS DISREGARD THE RELEVANT STANDARD OF REVIEW AND THE SECOND CIRCUIT'S INSTRUCTION THAT "LEAVE TO AMEND AT LEAST ONCE SHOULD NORMALLY BE GRANTED AS A MATTER OF COURSE"**

As explained in Plaintiffs' opening brief, a Rule 60(b) motion in this specific context is judged by fundamentally the same standard as a Rule 15 motion for leave to amend, albeit more exactingly in light of concerns about finality. *See* Pl. Br. at 5 (citing *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011)).[1] Thus, Defendants' arguments about "newly discovered evidence" and other Rule 60(b) grounds are non sequiturs here.

---

[1] *Sahni v. Staff Attorneys Ass'n*, No. 14-cv-9873, 2018 WL 654467, at *3 (S.D.N.Y. Jan. 30, 2018) ("However, 'considerations of finality do not always foreclose the possibility of amendment, even when leave to replead is not sought until after the entry of judgment.' Rather, 'postjudgment motions for leave to replead must be evaluated with due regard to both the value of finality and the policies embodied in Rule 15.' Thus, in such circumstances, courts may consider 'the nature of the proposed amendment in deciding whether to vacate the previously entered judgment.'") (quoting *Williams*, 659 F.3d at 213).

The Second Circuit has clearly held that, under virtually identical procedural facts, denial of a motion for leave to amend constituted reversible error. In *Strategic Capital Development Group, LLC v. Sigma Tau Pharmaceuticals*, the Second Circuit held that the district court abused its discretion by denying leave to amend:

> Given that the plaintiff, in its response to the motion to dismiss, appended a request to replead in the event the court decided the original pleading was insufficient, that the court entered judgment only one week after its decision to grant the motion, that plaintiff thereafter moved to replead without undue delay, furnishing a facially sufficient proposed amended complaint, and that the court's reasons for the denial were essentially that the court doubted the truthfulness of the new allegations, we believe the court should have granted leave to replead.

198 F.3d 234 (2d Cir. 1999) (table) (record citations omitted); *see also Williams*, 659 F.3d at 212-13 (holding that this basis for relief applies under Rule 60(b)(6)). The Second Circuit further explained, "Under the precedents of this circuit, 'leave to amend at least once should normally be granted as a matter of course.'" *Strategic Capital*, 198 F.3d at 234 (quoting *Oliver Schools*, 930 F.2d at 253).

Here, Plaintiffs articulated a similar contingent request to replead at the end of their brief opposing Defendants' motion to dismiss and again at oral argument. *See* ECF No. 9 (Plaintiffs' Response to Motion to Transfer or Dismiss) at 27; Nov. 14, 2017 Tr. at 59. The Court entered judgment here even faster than in *Strategic Capital*: a mere two days after its decision. And this Rule 60(b) motion was filed promptly, within two weeks of the Court denying a good faith motion for reconsideration.

Defendants' claim that they would be prejudiced by permitting amendment is a misfire. *See* Def. Br. at 12-13 (claiming the prejudice "*cannot be understated*" [sic]) (emphasis in original). By making the argument about the challenges Defendants would face *in discovery*, they implicitly concede the obvious: that permitting amendment would cure the problems identified by the Court in the original pleading, and thus survive another round of motions to

4

dismiss and allow the case to proceed to discovery. Defendants' "prejudice" argument is essentially a complaint about New York's six-year statute of limitations for these claims. This Court need not and should not second-guess New York's policy decision; Defendants' argument is easily dismissed as contrary to the general rule that as long as the amendment relates to the same operative facts, courts will not find undue prejudice. *See Kreppein v. Celotex Corp.*, 969 F.2d 1424, 1427 (2d Cir. 1992).

Likewise, Defendants' arguments about finality disregard the key Second Circuit precedent that applies to this situation, where a judgment was entered almost immediately following a Rule 12(b)(6) dismissal. Tellingly, Defendants rely mainly on an out-of-circuit opinion concerning denial of a Rule 60(b) motion that was filed after *summary judgment*—an obviously distinguishable procedural posture. *See James v. Watt*, 716 F.2d 71, 72 (1st Cir. 1983). Defendants make only a passing reference to the Second Circuit's decision in *Williams*, which instructed district courts to refrain from overemphasizing finality at the expense of resolving cases on their merits. *See* Def. Br. at 11; *Williams*, 659 F.3d at 214. In the same sentence, Defendants suggest that the Court need only articulate "some basis" besides timing in order to act within its discretion. Def Br. at 11. That is incorrect.

In *Strategic Capital*, the district court gave such a reason: it concluded that the amendment was not presented in good faith. 198 F.3d at 234. Nevertheless, the district court was summarily reversed. *Id*. Reviewing the precedents involving similar procedural postures, the Rule 60(b) inquiry turns on whether the amendment would be futile or not. *See, e.g.*, Pl. Br. at 2, 5–6. And on that point, Defendants do not even argue that the proposed amendments to the Peed claims are inadequate—thus conceding the point for at least one Plaintiff.

5

## II. THE AMENDED COMPLAINT CURES THE DEFECTS AND, ALTERNATIVELY, ASSERTS CAUSES OF ACTION CONSISTENT WITH THE COURT'S OPINION

Again, Defendants do not argue that the amendment as to Peed fails to sufficiently plead a quasi-contract cause of action. That issue is forfeited. And that alone is reason to grant Plaintiffs' motion.[2]

As to Brook's claims, Defendants resort to ridicule, attacks on strawmen, and outright fabrications to avoid addressing the actual pleadings in the FAC.[3] The Court need not resolve all of those arguments (which are presented in cursory fashion) now in order to find that the possibility of cure exists, and that the FAC appears to have cured the defects in at least one claim. Defendants do not come close to satisfying the heavy burden of depriving Plaintiffs of the usual opportunity to amend at least once. *See* Pl. Br. at 2 (collecting cases).

### A. Brook's Quasi-Contract Claims

Defendants first address Brook's restated quasi-contract claim in Count One. Incredibly, Defendants directly contradict the pleadings to contend that Simon had discretion over the amount of Brook's compensation from the Cuti Matter. *See* Def. Br. 16 (contending that, according to the FAC, Cuti Matter "bonus" payments "were discretionary as Simon always intended"). Defendants' argument is unquestionably contrary to the standard of review at any stage of civil litigation prior to trial. Nothing in the FAC would allow the Court to countenance Defendants' gross mischaracterization, which in fact is the opposite of the express allegations:

---

[2] This concession as to Peed means that the Court can wait to address Defendants' various and sundry arguments about Brook's claims if Defendants bring another Rule 12(b)(6) motion despite the curing of the defects, if the Court properly sets aside its judgment and permits amendment.

[3] An example of baseless ridicule, written as if the Court were biased in Defendants' favor or lacks basic reading comprehension skills, is Defendants' assertion that the FAC is a "meandering tome almost impossible to comprehend." Def. Br. at 14. This is a shameless attempt to convince the Court not to read the FAC, which in fact is clear and precise. At a minimum, the Court could focus on pages 9 to 14 (¶¶ 48–78), which address the critical point of confusion as to the original Complaint.

>Simon's proposal was merely that he would determine the *initial* payment(s) to Brook (Step One in the Negotiation Plan). And though he had discretion to determine that initial amount, the discretion was not unfettered: Simon was required to pay the amount that he believed, in good faith, was fair. Moreover, Simon's definition of fairness was circumscribed by his assurance to Brook that Brook would make more money by joining S&P than he would starting his own firm. By contrast, as to the final amount of Brook's Cuti Matter Share, Simon explicitly proposed to leave it temporarily unspecified, to be finalized through a bilateral agreement later. Simon never sought unilateral authority or discretion to determine the final Cuti Matter Share, and Brook certainly did not agree to give Simon any such authority or discretion.

FAC ¶ 67 (emphasis in original). *See also id.* ¶¶ 57, 58, 61, 241 (describing the obligation to pay Brook a portion of Cuti Matter revenue received as "non-discretionary" or "not discretionary"); *id.* ¶¶ 180–82 ("there was never an agreement on the amount or method of calculating Brook's full and final compensation").

Another way to read Defendants' argument is as another concession, since a contract is formed only when there is a meeting of the minds; whatever "*Simon* always intended" was not enough to create a binding agreement. *See* Def. Br. 16 (emphasis added). Indeed, Defendants are forced to acknowledge that "there was no agreement reached," even as they mispresent to this Court what the FAC alleges regarding Simon's intentions. *Id.* at 16. If having unilateral discretion is what "Simon always intended," then far from being a defense to a quasi-contract claim, it would supply an additional basis to establish that Simon fraudulently induced Brook to join S&P.[4] In any event, there is no conceivable basis for the Court to even consider this argument, since it is predicated on an inversion of the standard of review under Rule 12(b)(6).

---

[4] Since Simon clearly told Brook that the amount of his Cuti Matter Share would be something they would continue to negotiate, Simon—through his counsel—appears to be saying that Simon affirmatively misrepresented his then-existing state-of-mind to induce Brook to join S&P. If and when Simon makes that assertion under oath—contrary to all of the documentary evidence currently available—Brook may seek to amend once again.

Defendants also throw in their previous argument that an employee having a salary precludes a quasi-contract claim. *See* Def. Br. at 15. But that is not the law, and just because Defendants wish it were the law does not make it so. The Court rightly ignored this manufactured legal rule the first time around. The law is that the existence of a complete and binding *contract* precludes a quasi-contract claim. See ECF No. 26 (May 14, 2018 Decision) at 8. Thus, only if the salary reflected the complete agreed-upon compensation would Defendants' argument have any merit. Here, by contrast, the "salary" is alleged to be merely a draw against an undetermined amount of compensation. *See* FAC ¶ 60.

Finally, Defendants reference the Court's previous holding about Brook being an "at will" employee. *See* Def. Br. at 15-16. As noted in Plaintiffs' opening brief, however, the Court appears to have misread the case law. *See* Pl. Br. at 17 n.9. Being employed "at will" may, in some circumstances, preclude breach of contract claims, but not quasi-contract claims. *Id*. Defendants fail to respond to this point of argument. Furthermore, the FAC clarifies the important fact that S&P paid Brook more than $100,000 in non-employee compensation after his employment ended. *See, e.g.*, FAC ¶ 205. This demonstrates that much more than a normal at-will employment arrangement was going on with respect to Brook's unique services rendered to Defendants.

Defendants do not address the alternative quasi-contract theories in Count Two, which assert viable bases for relief even if the Court's May 14 Decision were to remain unchanged by the amended pleadings. FAC ¶¶ 195–211. This Count is predicated upon the fact that Defendants' conduct in 2012 concedes that Brook rendered valuable services that were outside the scope of any employment contract that could have existed, and that is why Defendants paid

Brook over $105,000 in "non-employee compensation" for work performed while he also was receiving compensation as an employee. *Id*. ¶¶ 203, 205–209

At bottom, all of Simon's bluster, obfuscation, and anger—palpable on the face of Defendants' brief—cannot change the fact that the FAC is now clear: "there was no agreement," Def. Br. at 16, on the amount of Brook's compensation from the Cuti Matter, and that compensation was non-discretionary. That is enough to cure the original complaint's defects and require procedure on the merits.

### B. Brook's New Claims

Regarding the New York Labor Law claims, Defendants' arguments are grievously uninformed, as they acknowledge they have done no research. *See* Def. Br. at 23. Instead Defendants rely on the argument that Brook could not have plausibly thought he was still an S&P employee, *see* Def. Br. at 19—demonstrating again that they lack any sense of the Rule 12(b)(6) standard. Brook was still on S&P's website as an associate; he had an office there, which he did not pay for directly; and he received health insurance. FAC ¶ 292. Brook's impression that he remained an employee was thus entirely plausible, even though it remains to be decided whether his view was legally correct.

Regarding breach of the Negotiation Plan, Defendants contend that it is implausible on its face, asking, "what employer would agree to that?" Def. Br. at 16. There are obviously plausible answers consistent with the FAC, not least among them: an employer who was dishonest and wanted to lure a young attorney and his lucrative client, then try to steal the client for himself. Ultimately, Defendants' arguments again insist on having this Court not only draw

inferences against Plaintiffs in violation of the standard of review, but actually rewrite the pleadings entirely. *See id.*[5]

Finally, it is worth responding to Defendants' claim that the FAC demonstrates bad faith by Brook, mainly because it demonstrates Defendants' own bad faith or ineptitude. *See* Def. Br. at 17-18. There is no "reversal" or "turnaround" by Brook in his allegations. Defendants are confusing two different things: (i) Brook's verbal condition of retroactivity for Simon's proposal, and (ii) Brook's written proposal. Just as the original Complaint alleged that Simon threw Brook's written proposal at him, the FAC continues to allege that "Simon reacted quite poorly" and rejected it. *Compare* Compl. ¶ 69 *with* FAC ¶ 136. And as for Brook's response to Simon's verbal proposal by countering with a condition of retroactivity, the allegations are also consistent. *Compare* Compl. ¶ 67 *with* FAC ¶¶ 132–133. The FAC merely clarifies that Simon's proposal—and Brook's condition for accepting it—was still expressly on the table after Brook presented a written alternative proposal. *See* FAC ¶¶ 137–139. In the original Complaint, that fact was only implied. *See* Compl. ¶ 71.

Defendants' vitriol and false accusations of bad faith have no place in this Court. By contrast, Plaintiffs' good faith claims against them very much belong here; Plaintiffs should be given at least one opportunity to amend to ensure that they receive an adjudication on the merits of their claims.

---

[5] The reason Plaintiffs attached the proffered evidence to this motion is because, based on the Court's decision, the Court appeared to doubt the sincerity of the pleadings; the evidence adduced in the Brook Declaration shows at a minimum that there is contemporaneous evidence that Brook believed there was an ongoing negotiation from day one—a point that Defendants actually concede elsewhere in their brief.

### C. Simon Misrepresents the Fraud/Rescission Claim, Again

Brook's fraud claim is not, and never was, about any promise to be made a partner. *See* Def. Br. at 20. No such promise is or ever was alleged. Rather, Brook's fraud claim is based on Simon misleading Brook to believe that S&P was a legitimate partnership—meaning more than one person had ownership in it—that Brook might have an opportunity to join fully one day. FAC ¶¶ 321–22. Brook was not interested in joining a fiefdom organized as a sham partnership because he saw no long-term future in such a place. Indeed, Simon ridiculed one of his competitors for operating that firm in what turned out to be exactly the same fashion as Simon ran S&P. *Id.* ¶ 326. Brook's fraud claim is simple: Simon misled Brook about the very nature and operation of his firm to induce Brook to bring his high-profile, lucrative client to S&P even while significant compensation terms remained unresolved between the parties.

## CONCLUSION

The Court should grant Plaintiffs relief from the judgment and follow the Second Circuit's instruction to permit Plaintiffs at least one opportunity to amend their complaint.

Respectfully submitted,

Dated: October 9, 2018

/s/ *Rhett O. Millsaps II*
Rhett O. Millsaps II
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (646) 535-1137
Fax: (646) 355-2816
rhett@rhettmillsaps.com

*Attorney for Plaintiffs*