**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| BRIAN C. BROOK, MATTHEW J. PEED, and BROOK & ASSOCIATES, PLLC | : |
|  | : |
| Plaintiffs, | : |
|  | : |
| -against- | : |
|  | : |
| BRADLEY D. SIMON and SIMON & PARTNERS, LLP, | : |
|  | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: **SEP 2 9 2020**

MEMORANDUM DECISION
AND ORDER

17 Civ. 6435 (GBD)

GEORGE B. DANIELS, United States District Judge:

This action returns to this Court on remand from the Second Circuit. Plaintiffs Brian Brook and Matthew Peed, both attorneys, filed this action on June 19, 2017[1] against a law firm, Defendant Simon & Partners, LLP ("S&P"), and its principal, Defendant Bradley Simon. Plaintiffs seek to recover damages related to legal work performed on behalf of the former CEO of Duane Reade Drugstores, Anthony Cuti (the "Cuti Matter"), while they were associated with S&P. Plaintiffs' initial complaint asserted claims for fraud, unjust enrichment, *quantum meruit*, and breach of contract. These allegations principally stem from disputes regarding the compensation Defendants paid Plaintiffs for the Cuti Matter, which Brook brought to S&P.[2]

---

[1] Plaintiffs originally filed this suit in the United States District Court for the District of Columbia. Defendants moved to transfer venue to this district, which was unopposed and granted on August 9, 2017. (*See* ECF No. 11.)

[2] The relevant factual background is set forth in greater detail in this Court's May 14, 2018 decision, (Mem. Decision and Order ("Dismissal Order"), ECF No. 26, at 2–7), with which familiarity is assumed. Such background is incorporated by reference herein. Though such factual background was based on Plaintiffs' initial complaint, any relevant differences and new allegations in Plaintiffs' amended complaint are discussed herein.

On May 14, 2018, this Court dismissed Plaintiffs' complaint in its entirety for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dismissal Order at 24.)  Plaintiffs, subsequently, moved for reconsideration of this Court's dismissal of Peed's *quantum meruit* claim and this Court's directive to close the case, as Plaintiffs intended to seek leave to file an amended complaint. (Pls.' Not. of Mot. for Partial Recons. of Dismissal, ECF No. 33.)  Plaintiffs, however, did not submit a proposed amended complaint or any explanation of how the deficiencies in their original complaint could be corrected.  This Court denied Plaintiffs' motion for reconsideration on both grounds. (Mem. Decision and Order, ECF No. 40.)  Plaintiffs, then, moved to set aside the judgment pursuant to Rule 60(b) and attached a proposed first amended complaint. (Pls.' Not. of Mot. for Relief from the J., ECF No. 41; Decl. of Brian C. Brook, Ex. F (Proposed First Am. Compl. and Jury Demand), ECF No. 43-6.)  Plaintiffs' proposed amended complaint asserted claims for quasi-contract liability, incorporating unjust enrichment and *quantum meruit* claims, breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, fraudulent inducement, and violations of New York labor laws. After considering the newly pled allegations related to each of these claims, this Court determined that Plaintiffs had not satisfied their burden for relief from judgment under Rule 60(b) and amendment would be futile as to all claims. (Mem. Decision and Order ("60(b) Order"), ECF No. 50.)  Plaintiffs appealed this Court's dismissal with prejudice and its denial of their motion to set aside the judgment.

On August 29, 2019, the Second Circuit vacated this Court's dismissal of the original complaint, finding, in particular, that any deficiencies on Plaintiffs' quasi-contract claims could have been corrected in an amended complaint. (Summ. Order ("Circuit Opinion"), ECF No. 53.) Notably, the Second Circuit did not consider the substance of Plaintiffs' proposed first amended

complaint and dismissed Plaintiffs' appeal of this Court's denial of their motion to set aside judgment as moot. (Circuit Opinion at 2, 4 n.1.) Plaintiffs have now filed an amended complaint, adding Brook's new law firm—Brook & Associates, PLLC—as a party, and asserting causes of action for quasi-contract, breach of contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, violation of New York labor laws, and fraudulent misrepresentation. (First Am. Compl. and Jury Demand ("FAC"), ECF No. 57.) Brook brings claims under all such causes of action, while Peed only brings claims for breach of contract and quasi-contract.

Defendants now move to dismiss Plaintiffs' FAC for failure to state a claim pursuant to Rule 12(b)(6). (Not. of Mot., ECF No. 62.) Defendants' motion is partially GRANTED dismissing Brook's claims for breach of contract (Count II), promissory estoppel (Count III), breach of the implied covenant of good faith and fair dealing (Count IV), violation of New York Labor Law § 193 (alleged in Count V), and fraudulent misrepresentation (Count VI), and Peed's claim for breach of contract (Count VII).

## I.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*,

556 U.S. at 679.  The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief."  *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at \*3 (S.D.N.Y. Nov. 19, 2013).  In deciding the 12(b)(6) motion, the court must also draw all reasonable inferences in the non-moving party's favor.  *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013).

## II.   PLAINTIFFS ADEQUATELY PLEAD CLAIMS FOR QUASI-CONTRACT LIABILITY

Plaintiffs reallege quasi-contract claims, sounding in *quantum meruit* and unjust enrichment, in their FAC.  (FAC ¶¶ 193–225, 377–87.)  "[A] quasi-contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved."  *Bradkin v. Leverton*, 257 N.E.2d 643, 645 (N.Y. 1970).  Despite their name, quasi-contracts are not contracts, "although they give rise to obligations more akin to those stemming from contract than from tort."  *Id.*  As explained by the Second Circuit, quasi-contract liability exists "to address unjust enrichment occurring in the absence of a binding agreement between the parties."  (Circuit Opinion at 5.)  The elements of a *quantum meruit* claim are: "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services."  *Mid-Hudson Catskill Rural Migrant Ministry, Inc., Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).  "New York law does not permit recovery in quantum meruit, however, if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim."  *Id.* (citing *Clark–Fitzpatrick, Inc. v. Long Island Rail Road Co.,* 516 N.E.2d 190 (1987); *Ellis v. Abbey & Ellis,* 742 N.Y.S.2d 225, 228 (1st Dep't 2002); *Mariacher Contracting Co., Inc. v. Kirst Constr., Inc.,* 590 N.Y.S.2d 613, 615 (4th Dep't 1992)).

### A. Peed's Quasi-Contract Claim

Based on the terms of his employment agreement, Peed alleges that his agreement with S&P terminated after Duane Reade paid the first invoice reflecting Peed's work on the Cuti Matter. (FAC ¶ 379.) Peed claims that he is, therefore, entitled to quasi-contract recovery for the work he performed thereafter. (*Id.* ¶ 380, 382.)

In previously dismissing Peed's claim, this Court accepted Peed's allegations as true, but determined that he failed to sufficiently allege the reasonable value of his services to support quasi-contract recovery. (Dismissal Order at 13.) The Second Circuit, however, found that the complaint's allegation that Duane Reade was billed $450 per hour for Peed's time spent on the Cuti Matter was "at least 'probative' of the reasonable value of Peed's services, even if Peed would not receive the full amount of revenue as a contract attorney of [S&P]." (Circuit Opinion at 4.) Further, the Second Circuit determined that even if this allegation was insufficient, "Plaintiffs could remedy this deficiency by adding substantial allegations regarding the basis for the reasonable value of Peed's services." (*Id.* at 5.) Peed adds further allegations to this effect in the FAC, including, *inter alia*, Peed's value to S&P on the Cuti Matter, his benefits to S&P beyond the Cuti Matter (e.g., S&P was afforded the opportunity to partner in the defense of a high-profile national security prosecution), his minimal overhead cost to S&P, and his position as "of counsel," rather than associate or contract attorney. (FAC ¶¶ 383–87.) In light of the Second Circuit's opinion, at this stage of the proceedings, such allegations are sufficient to allege a reasonable value of his services. Peed's quasi-contract claim survives Defendants' motion to dismiss.

### B. Brook's Quasi-Contract Claim

This Court previously concluded, as a matter of law, that Brook entered into a valid, enforceable oral agreement with Defendants that precluded any quasi-contract recovery for his

work at S&P. (Dismissal Order at 10–11.) In reaching this conclusion, this Court found that the complaint alleged that Brook's employment agreement included consideration in the form of a base salary of $150,000 per year, along with periodic bonuses and an unspecified percentage of origination credit, to be determined at Simon's discretion. (*Id.*) On appeal, the Second Circuit, however, determined that Brook was attempting to allege that he "had an agreement with Simon that his salary would include a *non-discretionary* bonus and origination credit for the Cuti Matter *in a mutually-agreed upon fixed percentage* to be determined at a future time, but that such agreement was never reached." (Circuit Opinion at 6.) The Circuit concluded that such allegations, if properly pled, could state a plausible quasi-contract claim because there was only an "agreement to agree" on a material term, which would render the contract unenforceable. (*Id.* at 8 (citing *Joseph Martin, Jr., Delicatessen Inc. v. Schumacher*, 417 N.E.2d 541, 543 (N.Y. 1981)).)

The Second Circuit also offered two points of guidance that inform this Court's analysis on remand. First, the Circuit distinguished a previous case where a contract that left material terms open for future agreement was, nevertheless, held to be enforceable. In that case, the Circuit explained, there was "a fully-executed, written agreement with explicit language that gave 'every indication that the parties intended it to be binding.'" (*Id.* (citing *Tractebel Energy Mktg, Inc. v. AEP Power Mktg, Inc.*, 487 F.3d 89, 95 (2d Cir. 2007)).) The Circuit also cautioned that the allegations of partial performance in Plaintiffs' complaint did not render any potential amendment on the quasi-contract claim futile, as partial performance is just "one factor among several for a court to examine in determining whether a contract existed under New York law." (*Id.* at 8–9.)

Brook's allegations in the FAC, considered in light of the Second Circuit's guidance, sufficiently allege a claim for quasi-contract liability. In June 2011, at a meeting to discuss Brook's

employment terms, Simon allegedly proposed that Brook's compensation be "primarily based on a non-discretionary portion of Cuti Matter revenue generated, plus potential discretionary bonuses for Brook's work on other [S&P] matters." (FAC ¶ 60.) Brook's portion of the Cuti Matter revenue (the "Cuti Matter Share") would include regular semi-monthly payments (i.e., a base salary) and periodic, non-discretionary supplemental payments. (*Id.* ¶ 61.) The so-called base salary would be $150,000 and would function as a "draw against the Cuti Matter Share" that was owed to Brook. (*Id.* ¶ 63.) Simon allegedly described the base salary amount as "artificially low" and assured Brook it would have "no bearing" on Brook's full compensation, assuming that at least some of the Cuti Matter fees were paid by Duane Reade. (*Id.*) The parties did not agree on the amount of Brook's share of the Cuti Matter revenue or set a formula for calculating the amount. (*Id.* ¶ 65.) Instead, they agreed on a procedure "to ensure the parties were committed to negotiate the Cuti Matter Share on fair terms at a future date." (*Id.* ¶ 67.) Specifically, "[a]fter Duane Reade paid S&P, Simon would direct deposit the sum of money that Simon believed, in good faith, was fair to complete the Cuti Matter Share." (*Id.*) Brook would then decide "if he agreed that Simon's proposed Cuti Matter Share was fair and satisfactory," and "[i]f unsatisfactory, then Brook and Simon would proceed to negotiate 'fixing' the Cuti Matter Share so that they both agreed it was fair." (*Id.*) However, Brook alleges that this final step never occurred. There was never any agreement on the Cuti Matter Share, written or oral. Assuming Brook's allegations to be true, his arrangement with Simon constituted nothing more than an "agreement to agree" on Brook's total compensation. Moreover, the Cuti Matter Share was a material term to Brook and Simon's agreement, especially considering Simon's alleged reassurances that Brook's base salary was "artificially low." Accordingly, despite the fact that both parties performed under this agreement, it was unenforceable. Brook sufficiently alleges the absence of a contract "govern[ing] the same

subject matter as [his] quantum meruit claim" for the services he rendered at S&P. *Mid-Hudson Catskill*, 418 F.3d at 175.

Finally, Brook alleges that, at the least, the amount of his own billings on the Cuti Matter, which was based on a rate of $500 per hour, constitutes reasonable value of his services. (FAC ¶¶ 205–06.) Similar to Peed, Brook's allegations on this element are sufficient and he adequately states a claim for quasi-contract liability against Defendants.[3]

## III. PLAINTIFFS' FAC CONTAINS NUMEROUS CLAIMS PREVIOUSLY DEEMED INADEQUATE BY THIS COURT

Plaintiffs also bring several claims that are duplicative of those previously considered and deemed inadequate in this Court's 60(b) Order. (*See* 60(b) Order at 12–15.) Specifically, Peed's claim for breach of contract and Brook's claims for breach of contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, fraudulent misrepresentation, and violation of New York Labor Law § 193 for improper deductions from wages are substantially identical to those in Plaintiffs' proposed amended complaint filed with their motion to set aside judgment.[4]

---

[3] Defendants also argue that Simon is shielded from all personal liability, because Plaintiffs were employed by S&P, not Simon. Plaintiffs allege, however, that Simon is personally liable under an alter ego theory. (FAC ¶¶ 187–92.) In support, Plaintiffs point to the fact that Simon was the sole equity partner of S&P. Moreover, he has allegedly taken over one million dollars in distributions from S&P since June 2012 and failed to leave sufficient funds in S&P to pay its debts, including those to Brook and Peed. (*Id.* ¶ 192.) Plaintiffs also allege that the amounts drawn from S&P after the firm was paid for the Cuti Matter exceeded the amount that constituted reasonable compensation for Simon's own services. (*Id.*) Considering these allegations, at this stage, this Court declines to dismiss Simon as a defendant. *See Holme v. Glob. Minerals & Metals Corp.*, 880 N.Y.S.2d 873 (Sup. Ct.), *aff'd*, 879 N.Y.S.2d 453 (2009) ("The theory of piercing the corporate veil involves a fact laden inquiry, which is unsuited for resolution on a pre-answer, pre-discovery motion to dismiss." (citations omitted)).

[4] Brook adds one theory of liability to his breach of contract claim. Brook alleges that "to the extent an enforceable oral agreement between Brook and S&P existed, it included Simon's verbal promise that Brook would be paid more than he would make on his own." (FAC ¶ 232.) Brook claims that Simon breached this promise and, as a result, Brook suffered damages "equal to at least the difference between the amount that he was paid and the amount of his billables on the Cuti Matter." (*Id.* ¶¶ 235–36.) These allegations, however, fail for the same reason as Brook's promissory estoppel claim. The amount of revenue Brook would have generated if he had opened his own firm is speculative.

This Court found Plaintiffs' allegations in their proposed amendment regarding such claims to be futile—a determination that was left undisturbed by the Circuit Opinion, which only addressed this Court's analysis of Plaintiffs' quasi-contract claims, as alleged in their original complaint.[5] This Court, therefore, sees no reason to reconsider its previous analysis of such claims.

Moreover, under Rule 15(a), at this stage, Plaintiffs are only permitted to amend their complaint with opposing party consent or the leave of the Court. Fed. R. Civ. P. 15(a). At no point did this Court provide leave for Plaintiffs to file an amended complaint with claims that this Court previously found to be inadequate and which the Circuit did not address on appeal.[6] Though a court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), it is not required to do so when the Plaintiffs simply rehash the same allegations previously reviewed and rejected. In any event, Plaintiffs have not cured the defects with such claims identified by this Court in the 60(b) Order. Accordingly, these claims are dismissed.

## IV.    CONCLUSION

Defendants' motion to dismiss, (ECF No. 62), is GRANTED to the extent that Plaintiffs' claims for breach of contract, promissory estoppel, breach of the implied covenant of good faith

---

[5] Though this Court did not explicitly address Peed's breach of contract claim in the 60(b) Order, it determined that the FAC was futile in its entirety. (60(b) Order at 15.) Further, this Court's analysis of this claim in the Dismissal Order was undisturbed by the Circuit Opinion. The FAC does not cure the defects of Peed's breach of contract claim identified in the Dismissal Order. (*See* Dismissal Order at 13–16.)

[6] On September 3, 2019, Plaintiffs wrote to this Court regarding scheduling for filing an amended complaint "as permitted by the Second Circuit's" order. (*See* Order, ECF No. 56.) Plaintiffs explained that they did not intend "to simply file the proposed First Amended Complaint that was previously submitted." (*Id.*) They explained that though "the facts will remain the same, we are currently evaluating whether to remove some of the alternatively pled causes of action in light of the Second Circuit's Order." (*Id.*) With this understanding, this Court approved Plaintiffs' proposed deadline for filing such an amended complaint. (*Id.*)

and fair dealing, fraudulent misrepresentation, and violation of New York Labor Law § 193 are

dismissed.[7]

The Clerk of Court is directed to close the motion accordingly.


Dated: New York, New York
    September 29, 2020

SO ORDERED.

GEORGE B. DANIELS
United States District Judge

---

[7] Count V of the FAC alleges violations of New York Labor Laws §§ 195(1)(a) and 193.  (FAC ¶¶ 292–310.)  Brook's claim for violation of New York Labor Law § 195(1)(a), which requires an employer to provide an employee with written notice of compensation at the time of hiring, remains.